UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
|     Plaintiff, | No. C 05-0149 MHP |
|     v. | **MEMORANDUM & ORDER** |
| JOSE ISAIS-CABRERA, ET AL., | **Re: Defendant Aguayo's Motion to Suppress** |
|     Defendants. | |

On March 10, 2005 Jose Isais-Cabrera, along with fourteen co-defendants, was indicted on several counts of conspiracy to possess with the intent to distribute cocaine and heroin in violation of 21 U.S.C. sections 841, 846; conspiracy to launder money in violation of 18 U.S.C. section 1956(h); and use of a communication device to facilitate a drug crime in violation of 21 U.S.C. section 843(b). Defendant Carlos Aguayo maintains that his arrest was the result of an illegal, warrantless search. Now before the court is defendant Carlos Aguayo's motion to suppress all evidence gathered as a result of the allegedly illegal search. The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

BACKGROUND

On February 17, 2005 Agent Guyse executed an affidavit in support of a search warrant search 1505 Sullivan Street, Apartment No. 5. This address was believed to be the residence of Jose Isais-Cabrera and Lazarito (Carlos Aguayo). In his affidavit, Agent Guyse detailed the facts in establishing probable cause to search Apartment No. 5. See First Guyse Aff. ¶¶ 134–42. For example, in an intercepted telephone call between Isais-Cabrera (Borrego) and Aguayo (Lazarito), Isais-Cabrera directed Aguayo to his residence at Apartment No. 5. Id. ¶ 142.

On the same day, Agent William Sicord—a special agent for the Drug Enforcement Administration ("DEA")—and a number of other officers positioned themselves outside of the apartment complex. The officers observed Lazarito entering 1505 Sullivan several times during the evening of February 17, 2005 and at approximately 10:30 pm they observed him entering the complex for the last time that evening—parking his car outside and ascending to the second floor. Officers watched the apartment complex for the entire night and did not see Lazarito leave the building.

At approximately 6:00 am on February 18, 2005 the officers entered the complex and searched Apartment No. 5 pursuant to a search warrant on Apartment No. 5. Although Isais-Cabrera and several other individuals were found inside Apartment No. 5, Aguayo was not present. The agents did not have an arrest warrant for Aguayo. The officers then knocked on all the apartment doors within the complex and contacted individuals in all of the apartments except Apartment No. 2. The federal agents also discovered (through discussions with the landlord) that Apartment No. 5 was rented under the name Jose Cuevas and Cuevas' brother Abel was the listed renter of Apartment No. 2. Agents also called Aguayo's cellular phone and believed that they could hear it ringing within Apartment No. 2. According to federal agents, at this point, they concluded that Aguayo was in Apartment No. 2.

At approximately 6:30 am, federal agents knocked loudly again on the door to Apartment No. 2, announcing that they were the police and that they needed to speak to any person within Apartment No. 2. According to Agent Sicord, Apartment No. 2 was located directly across from Apartment No. 5, and the hallway was only six or seven feet wide. Thus, any occupant of Apartment No. 2 would have heard the loud forced entry of Apartment No. 5 and would have been aware of a police presence in the apartment complex. According to the agents, they were concerned that Aguayo was aware that the police were present and that he could be destroying evidence and that he could be "a threat to officers, [since] he . . had previously been arrested for homicide and he had a gun registered in his name." Sicord Dec. ¶ 6.

Approximately one minute after knocking on Apartment No. 2 for a second time, the federal officers forced entry into the apartment. The federal officers observed a strong odor of cocaine and

found Aguayo awake and laying on the floor behind the front door of the apartment. Through a protective sweep of the apartment, the agents found in plain view scales and other narcotics packaging materials in the kitchen and a large open bag of cocaine in the closet next to which Aguayo was lying. After this initial search, federal officers sought and secured an arrest warrant for Aguayo based on a second affidavit submitted by Agent Guyse. A search warrant was later signed that same day by Magistrate Judge James and pursuant to this warrant, seven kilograms of cocaine and a large amount of heroin was found in Apartment No. 2.

Aguayo contends that the warrantless entry in to Apartment No. 2 violated his Fourth Amendment rights and that the evidence obtained during that search and the subsequent search should be suppressed. The government argues that exigent circumstances justified the police's entry into Apartment No. 2, or, alternatively, that the police would have inevitably discovered the evidence after they secured the second warrant. At the initial hearing on this motion, the court asked the government to submit supplemental briefing by September 18, 2006. The government failed to submit any supplemental briefing in this matter.

DISCUSSION

Defendant moves to suppress the evidence obtained in the initial search on the grounds that the warrantless entry into the apartment violated his Fourth Amendment rights and that the police violated the knock and announce rule. He further asks the court to exclude evidence obtained in the subsequent search, this time with a warrant, on the grounds that the evidence is the fruit of the poisonous tree.

**I.   Initial Warrantless Entry into the Apartment**

In general the Fourth Amendment bars a warrantless search of or entry into a residence unless (1) there is probable cause and (2) exigent circumstances are present. United States v. Cervantes, 219 F.3d 882, 887 (9th Cir. 2000). In this case, the police had probable cause to believe that Aguayo was in Apartment No. 2 based on their observations of him entering the apartment building; the searches conducted of the other apartments in the building; the relationship between

3

the owners of Apartment No. 2 and Apartment No. 5; and Aguayo's cell phone ringing in Apartment No. 2.

Probable cause to believe that a person is present in a particular residence is insufficient for warrantless entry. The police must have probable cause to believe there was contraband or evidence of a crime before a entering a home. The government must show that there was a "fair probability that contraband or evidence of a crime" was in the apartment. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Aguayo argues that the police did not have probable cause to believe that there was contraband in the apartment, but the Guyse affidavit proves otherwise. While the initial warrant was issued to search Apartment No. 5, the affidavit supporting that warrant suggests that the officers had probable cause to believe that Aguayo went to 1505 Sullivan Avenue to obtain records of narcotic sales from another defendant's residence. First Guyse Aff. ¶¶ 140-142. Once the officers learned that Apartments No. 2 and 5 were purportedly owned by relatives and that Aguayo himself was likely to be in Apartment No. 2, they had probable cause to believe that the records of narcotics transactions were contained in No. 2. However, probable cause, without more, is insufficient to justify a warrantless search.

To satisfy the exigent circumstances exception, the government must show that the officers could not have obtained a warrant in time to execute the search. The time element also goes to the exigency requirement. Failure to make a "good faith attempt to obtain a telephonic warrant or to present evidence showing that a telephonic warrant was unavailable ordinarily requires suppression." Tarazon, 989 F. 2d at 1050 (citing United States v. Alvarez, 810 F.2d 879, 881–84 (9th Cir. 1987)). The police officers here waited approximately thirty minutes between knocking on Apartment No. 5 and Apartment No. 2. The evidence presented suggests that the officers' concern with Aguayo fleeing is a sufficient basis for failure to obtain a warrant. Therefore, the court concludes that the government has satisfied its burden on the failure to obtain a telephonic warrant.

The government must also satisfy the exigent circumstances requirement. Exigent circumstances requires that there be some indication, based on the totality of the circumstances, that evidence would be destroyed or the suspect would flee. United States v. Salvador, 740 F.2d 752

1  (9th Cir 1984). Furthermore, the government bears the burden of demonstrating a risk of destruction
2  with particularity. United States v. Reid, 226 F.3d 1020, 1028 (9th Cir. 2000) "Mere speculation
3  regarding the presence of drugs on a premises and the danger of their destruction is not sufficient to
4  show exigent circumstances." United States v. Tarazon, 989 F.2d 1045, 1049 (9th Cir. 1993).
5  Contrary to the government's contention, there were no exigent circumstances here.  There is simply
6  no evidence of any sort of indicating that Aguayo was destroying evidence at the time the police
7  entered Apartment No. 2.  The government argues that  the police officers had a reasonable belief
8  that Aguyao might destroy evidence based on his likely awareness of Borrego's search and arrest in
9  Apartment No. 5, but this type of speculation does not satisfy the requirement of a particularized
10 evidence necessary to support a reasonable belief.   Nor has the government provided sufficient
11 evidence for its contention that the warrantless entry was necessary to protect the police officers.  It
12 has provided nothing beyond the blanket assertion that it is "obvious and reasonable" for the police
13 to conclude that Aguayo might harm the officers if he had learned of Borrego's search and arrest.
14 Gov't Resp. at 8.  The general observation that guns and drug trafficking are often interrelated does
15 not support the government's argument. The government's claim that the conduct of the officers
16 after entering the apartment supports their view of this as an emergency is not compelling. Id.  The
17 officers had sufficient time between the search of Apartment No.  5 and the entry into Apartment
18 No.  2 to obtain a telephone warrant.  In fact, they appear to have taken their time rather than acting
19 as if exigent circumstances existed.  The court concludes that the government has failed to carry its
20 "heavy burden" of showing "particularized evidence" that the agents reasonably believed that the
21 defendant presented a substantial risk of flight at the time of the arrest or was destroying evidence.
22 Reid, 226 F.3d at 1028.
23        The government argues that the police would have inevitably obtained a warrant for
24 Apartment No. 2, based on the affidavit that supported the warrant for Apartment No. 5.  This
25 argument would reduce the inevitable discovery doctrine to nothing more than an assertion that if
26 the government could have obtained a warrant, it need not do so.  This very broad form of an
27 inevitable discovery argument would eviscerate the warrant requirement altogether and perverts the
28

5

government's obligation under the Fourth Amendment. United States v. Echegoyen, 799 F.2d 1271, 1280 n.7 (9th Cir. 1986). The court declines to adopt this reading of the inevitable discovery doctrine. At the hearing on this issue, the court asked the government for more persuasive briefing. The government did not file any further briefing in support of its argument.

In sum, the court finds that although the police had probable cause to believe that Aguayo was in Apartment No. 2 and that contraband would be found therein, the government must also show exigent circumstances to justify warrantless entry in to Apartment No. 2. It fails on this latter element. Accordingly, the court need not consider defendant's arguments that the police also violated the knock-notice statute.

Therefore, the court grants defendant's motion to suppress evidence obtained as a result of the warrantless search of Apartment No. 2.

## II.     Subsequent Search of Apartment No. 2

Aguayo asks the court to suppress all evidence obtained in the subsequent search of the apartment after the police obtained a warrant to search Apartment No. 2. Aguayo argues that the warrant was obtained on the basis of evidence found in the apartment during the initial warrantless search and should therefore be suppressed.

This is a question of the fruit of the poisonous tree doctrine, by which the exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality. Segura v. United States, 468 U.S. 796, 804 (1984). Suppression is justified only where the government's illegal search is the but-for cause of the discovery of the evidence. Id. at 815. The causation requirement has not been met here. The warrant to search Apartment No. 2 was based on a second Guyse affidavit, which contained observations of evidence of potential illegality from the warrantless entry as well as the information submitted in connection with the earlier warrant issued to search Apartment No. 5. See Second Guyse Aff. ¶ 16-17. Therefore, the court must strike the illegally obtained observations and consider the sufficiency of the basis for the warrant absent the stricken evidence. As noted

6

previously, the evidence submitted in connection with the first warrant was sufficient to demonstrate probable cause to search Apartment No. 2 had it actually cited No. 2 as a property to be searched. The illegal search was not, therefore, the but-for cause of the second warrant and resulting evidence. Consequently, the request to suppress evidence obtained as a result of the second warrant is denied.

CONCLUSION

For the foregoing reasons, the court hereby GRANTS defendant's motion to suppress with respect to evidence obtained as a result of the initial warrantless search. The court concurrently DENIES the request to suppress evidence obtained as a result of the execution of the search warrant on Apartment No. 2.

IT IS SO ORDERED.

Dated: Jan. 19, 2007

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California