United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JOSE ISAIS-CABRERA, ROBERTO MORENO, et al.,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　　　　　／ | No. C 05-00149 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Defendants' Motion to Suppress; Motion for Reconsideration** |

On March 10, 2005 Roberto Moreno and Jose Isais-Cabrera, along with thirteen co-defendants, were indicted on several counts of conspiracy to possess with the intent to distribute cocaine and heroin in violation of 21 U.S.C. sections 841, 846; conspiracy to launder money in violation of 18 U.S.C. section 1956(h); and use of a communication device to facilitate a drug crime in violation of 21 U.S.C. section 843(b). Now before the court is a motion to suppress filed by defendant Moreno and joined by defendant Isais-Cabrera, and a motion for reconsideration filed by Isais-Cabrera. The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

BACKGROUND

At issue in the present motion to suppress is an affidavit executed by FBI Agent Melanie Adams ("Adams Affidavit") in support of a wiretap order that was issued on November 2, 2004 ("November Wiretap") by Judge Maxine M. Chesney. The Adams Affidavit requested authorization

to continue to intercept telephone number 415-637-7081 ("Target Telephone 1"), for which the government had received initial authorization on September 10, 2004. Adams Aff. ¶¶ 4 & 17. Additionally, the Adams Affidavit requested authorization to begin intercepting numbers 415-336-9156 ("Target Telephone 2"), 415-336-8825 ("Target Telephone 3") and 415-240-2064 ("Target Telephone 4"). Id., ¶ 4. Each of these numbers was associated with a drug trafficking group later identified as the Borrego Narcotics Organization ("BNO"). Id. The stated targets of the November Wiretap were several suspected BNO conspirators, including two primary conspirators: Jose Isais-Cabrera (aka "Borrego"), and Lazaro Last Name Unknown (aka "Carlos Aguayo," "Chivo" and "Lazarito"). Id., ¶¶ 3-4.

The Adams Affidavit set out in exhaustive detail the government's use of a variety of techniques to investigate the BNO. Id., ¶¶ 68-96. Specifically, the government conducted extensive wiretap surveillance of Target Telephone 1, physical surveillance of suspected BNO drug deals, trash and mail covers, and analysis of telephone toll records, pen registers, and trap and trace data. Id. Despite use of these investigative techniques, the government had not been able to fully identify and locate Borrego and Lazarito, and the techniques used had failed to reveal many of the BNO's satellite conspirators, including suppliers, distributors and purchasers. Id., ¶¶ 48-49. While wiretap surveillance of Target Telephone 1 had allowed agents to observe and identify some BNO customers, it had not led to identification of Lazarito and Borrego. Id., ¶¶ 77 & 79. Through use of physical surveillance, agents were able to observe and videotape Lazarito delivering narcotics, but they still were not able to identify him, and were concerned that prolonged physical surveillance would lead to detection. Id., ¶ 79. The government's use of trash covers, mail covers, telephone toll records, pen registers and trap and trace data had not led to any significant evidence. Id., ¶¶ 89-118.

The Adams Affidavit also included information provided by confidential sources, most

notably "CS-13," an individual who had been recently arrested in possession of heroin. Id., ¶¶ 102–110. According to the Adams Affidavit, CS-13 provided the government with yet unknown information about Borrego, including that his true name is Isais-Cabrera, he runs a drug trafficking network in the United States that smuggles cocaine, crystal methamphetamine, and heroin into the United States from Mexico, and he knows and purchases narcotics from Hugo Aguilar-Floriano ("Floriano"), a heroin supplier living in Mexico, and Jose Lopez-Manriquez (aka "Paloma"), a drug distributor living in California. Id., ¶¶ 102-105. The Adams Affidavit further noted that CS-13 informed agents that Target Telephone 2 and Target Telephone 3, which were found in CS-13's cell phone under the name "Chivo," were associated with Borrego. Id., ¶ 102. While the Adams Affidavit acknowledged that CS-13 provided some valuable information, it stated that such information was not sufficient to prosecute Borrego or identify co-conspirators, and, in any event, CS-13 was incarcerated and thus of limited use to the investigation. Id., ¶ 109.

Based on its lack of success in using normal investigative techniques, the government sought authorization to continue its wiretap of Target Telephone 1 and begin wiretapping Target Telephone 2, Target Telephone 3 and Target Telephone 4. Id., ¶ 68. The stated goals of the November Wiretap were, *inter alia*: full identification of Borrego and Lazarito; discovery and identification of co-conspirators and locations where narcotics were stored and/or manufactured; and the gathering of sufficient admissible evidence to prove the suspects' criminal conduct beyond a reasonable doubt. Id., ¶¶ 70-75.

The evidence gathered from the November Wiretap of Target Telephone 2 and Target Telephone 3 was detailed in a February 17, 2005 affidavit executed by DEA Agent Guyse ("Guyse Affidavit"). According to the Guyse Affidavit, the government intercepted multiple calls between Moreno and Target Telephone 3, which was used by Lazarito. Guyse Aff. ¶¶ 33-44. The government also intercepted calls made by Borrego from Target Telephone 2 to Moreno. Id., ¶¶ 45-

46. Evidence obtained from surveillance of these and others calls, as well as other types of surveillance, led to additional wiretaps and eventually the indictments of Isais-Cabrera, Lazarito, Moreno, and their co-defendants.

On January 11, 2008 defendant Moreno filed a motion to suppress evidence obtained from the November Wiretap of Target Telephone 3. On January 31, 2008 defendant Isais-Cabrera joined Moreno's motion to suppress the November Wiretap of Target Telephone 3 and, based on the same evidence, moved to suppress evidence obtained from the November Wiretap of Target Telephone 2. In addition, Isais-Cabrera moved for reconsideration of the court's denial of his motion to suppress evidence obtained from wiretap orders issued on December 27, 2004, January 19, 2005, January 21, 2005 and February 10, 2005. See Docket Entry 217. He argues that new information about CS-13 revealed in the present motion requires the court to reconsider his previous motion.

LEGAL STANDARD

Title III sets forth procedures by which courts may issue warrants allowing law enforcement officials to intercept electronic communications as part of their investigation of criminal activity. See 18 U.S.C. §§ 2510–2520. In order to narrow the circumstances under which these intrusive investigative techniques may be used, Title III requires that each wiretap application include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). This is the "so-called necessity requirement for granting a wiretap order." United States v. Ippolito, 774 F.2d 1482, 1485 (9th Cir. 1985). In satisfying the necessity requirement, the government need not exhaust all alternative means of investigation but "neither should it be able to ignore avenues of investigation that appear both fruitful and cost-effective." Id.

The Ninth Circuit has given law enforcement "more leeway in its investigative methods when

4

it pursues a conspiracy" and has "consistently upheld findings of necessity where traditional investigative techniques lead only to apprehension and prosecution of the main conspirators, but not to apprehension and prosecution of . . . other satellite conspirators." United States v. McGuire, 307 F.3d 1192, 1197–98 (9th Cir. 2002) (quoting United States v. Torres, 908 F.2d 1417, 1422 (9th Cir. 1990)).

A defendant may move to suppress intercepted communications based on misstatements or omissions in the affidavit supporting the Title III warrant. See Meling, 47 F.3d 1546, 1553 (9th Cir. 1995). A defendant must make a "substantial preliminary showing" that (1) the affidavit contains "intentionally or recklessly false statements" or misleading omissions and (2) the affidavit cannot support a finding of probable cause or necessity without the allegedly false information. See id.; Ippolito, 774 F.2d at 1485. If the defendant succeeds in making this showing, the "proper procedure" is for the court to conduct a Franks hearing—an evidentiary hearing (*ex parte* and *in camera*, if necessary) in order to ascertain whether the defendant "has made a threshold substantial showing of falsehood" and, if so, whether the affidavit, without its misleading statements and omissions, supports a finding of necessity. See United States v. Reeves, 210 F.3d 1041, 1044 (9th Cir. 2000) (citing United States v. Kiser, 716 F.2d 1268, 1273 (9th Cir. 1983)) (internal quotation marks omitted); Franks v. Delaware, 438 U.S. 154, 156 (1978).

DISCUSSION

I. Defendants' Motion to Suppress Evidence Derived from the November Wiretap

In the present motion, defendants argue that the Adams Affidavit misrepresented the need for interception of Target Telephone 2 and Target Telephone 3 of the November Wiretap. The heart of

5

defendants' argument is that the Adams Affidavit purposefully or recklessly omitted information about CS-13's connections to primary BNO conspirators. According to defendants, had the Adams Affidavit detailed all of CS-13's ties to the BNO, it would not have been able to support a finding of necessity for interception of Target Telephone 2 and Target Telephone 3. Defendants argue secondarily that the Adams Affidavit misrepresented the possible usefulness of other investigative avenues and techniques that the government could have pursued in lieu of wiretaps. The court first dispenses with defendants' secondary arguments, then addresses defendants' assertions regarding CS-13.

### A. Other Investigative Avenues and Techniques

Defendants argue that the Adams Affidavit misrepresented or failed to disclose four promising avenues of investigation: first, evidence obtained from surveillance of Lazarito's vehicle; second, evidence about an individual named Victor Cuevas; third, debriefing of an individual named Gallegos; and fourth, use of CS-13's brother as a confidential informant. In addition to these four arguments, defendants contend that the Adams Affidavit recklessly discounted the potential usefulness of traditional surveillance techniques, such as use of GPS devices and helicopters. The court briefly addresses these arguments below.

#### 1. Evidence Obtained from Surveillance of Lazarito's Vehicle

One of the justifications for the November Wiretap was determining Borrego's and Lazarito's true identities and addresses. Adams Aff. ¶ 70. Defendants allege that the government had within its possession evidence about Lazarito's vehicle that would have led to identification and location of both Lazarito and Borrego. Specifically, defendants claim that prior to the November Wiretap, agents conducted surveillance of Lazarito driving to and from suspected drug deals. By checking DMV records, the government discovered that Lazarito's vehicle was owned by an individual named Jose Cruz and previously owned by an individual named Diana Embriz. Neither of these facts was

disclosed in the Adams Affidavit. Apparently unbeknownst to the government at the time, Lazarito had registered for a California driver license under the name Jose Cruz. Defendants assert that had the government reviewed California driver licenses registered under the name Jose Cruz, it would have discovered one with Lazarito's photograph. Defendants also argue that the government should have interviewed Embriz because, they claim, she would have identified Borrego, whom she had known for ten years, and may have been able to identify Lazarito. Because the Adams Affidavit fails to disclose these leads, defendants argue that the government misrepresented the necessity of the November Wiretap.

Although defendants are correct that the government did not pursue these leads or mention them in the Adams Affidavit, their argument is not sufficient to warrant a Franks hearing. The government is not obligated to pursue every avenue of investigation before resorting to wiretap surveillance, see Ippolito, 774 F.2d at 1485, particularly where such avenues are likely to lead only to identification and prosecution of primary conspirators, see McGuire, 307 F.3d at 1197-98. Pursuit of the Jose Cruz and Diana Embriz leads may have led to identification of Lazarito and Borrego, but there is no evidence that it would have led to identification of satellite conspirators. Moreover, the government had legitimate reasons for not fully pursuing these leads. After conducting an initial DMV search and finding approximately 4,900 hits for California driver licenses registered to Jose Cruz, the government narrowed its search based on evidence obtained through toll and pen record analysis. Gov.'s Opp. at 11. When this failed, the government decided that its limited resources would be better used elsewhere. Id. With respect to Diana Embriz, the government decided not to interview her because it knew nothing about her and feared she would alert Lazarito and Borrego to the investigation. Id. The court thus finds that the government made a reasonable decision not to pursue these leads and that disclosure of them in the Adams Affidavit would not have affected Judge Chesney's decision to authorize the November Wiretap.

2. <u>Victor Cuevas</u>

Defendants also argue that the Adams Affidavit failed to disclose information about an individual named Victor Cuevas that, if pursued, would have led to identification of Borrego. According to defendants, the government had obtained this evidence through the following series of events that apparently occurred prior to authorization of the November Wiretap: an individual named Abel Cuevas was pulled over and arrested for possession of narcotics; police seized, *inter alia*, his vehicle and cell phone; the government later learned that the car was registered to Victor Cuevas and its prior owner was an individual named Horatio Lopez Salgado ("Salgado") whose address was listed as 1505 Sullivan Avenue, Apartment 5H, Colma, California ("1505 Sullivan"); finally, the government learned that the subscribers to the cell phone were Victor Cuevas and Abel "Esias" or "Isais." Def. Moreno's Exh. G at 2-4. Unbeknownst to the government at the time, Salgado was an aka for Borrego and Borrego's true address was 1505 Sullivan, the address listed under Salgado's name. Id. Borrego had also registered for a California driver license using the name Victor Salgado. Id., Exh. I. Defendants assert that these pieces of evidence, as well as toll and pen register records linking Victor Cuevas to Manriquez, provided information from which the government could identify and locate Borrego. Id., Exh. A at 6.

Although the Adams Affidavit did not disclose the above information, such non-disclosure was not material to the necessity of the November Wiretap. As discussed, *supra*, identification and location of Borrego was just one of the goals of the November Wiretap. Moreover, defendants' argument about what the government could have done with this information is too speculative. Prior to the November Wiretap, the government did not know that Borrego's address was 1505 Sullivan, nor had the government seen Borrego. Thus, even if the government had obtained the Victor Salgado driver license, it had no reliable way of determining whether the individual in the photograph was

8

Borrego. Thus, this argument is not sufficient to warrant a Franks hearing.

### 3. Gallegos

One of the purposes of the November Wiretap was to obtain evidence that an individual named Gallegos was supplying Borrego and Lazarito with narcotics. Adams Aff. ¶ 75. Adams stated in the affidavit that the government had not yet obtained any such evidence. Id. Defendants claim that this was a false statement. They point to a different paragraph in the Adams Affidavit that noted that Gallegos had been arrested in January 2003 in possession of heroin and that agents had found on Gallegos two cards with the name "Borrego" written on them. Id., ¶ 62(e). They also point to an October 25, 2004 Gallegos debriefing report ("Gallegos Debriefing") in which agents confirmed that Gallegos had delivered 230 ounces of narcotics to Borrego. Def. Moreno's Exh. L at 3. Defendants thus allege that had the Adams Affidavit fully disclosed Gallegos' established connections to Borrego, the November Wiretap of Target Telephone 2 and Target Telephone 3 would have been unnecessary.

Although defendants are correct that the Adams Affidavit contained contradictory information about Gallegos' ties to the BNO, their argument is not sufficient to warrant a Franks hearing. The court cannot conclude that a finding of necessity for the November Wiretap hinged on the government's statement that it had not yet obtained evidence that Gallegos was supplying Borrego. Obtaining evidence of Gallegos' connections to the BNO was but one of several purposes of the November Wiretap. For example, the government also sought to obtain evidence sufficient to identify and prosecute several suspected BNO customers, see Adams Aff. ¶ 69, possible money launderers, see id., ¶ 71, and several suspected suppliers, see id., ¶ 75. Thus, the court finds that the discrepant information about Gallegos in the Adams Affidavit was not material to the necessity of the November Wiretap.

### 4. CS-13's Brother

9

Defendants also allege that at some point following CS-13's arrest, CS-13's brother began working as an informant for the government. According to defendants, the government could have achieved the goals of its investigation by using CS-13's brother, who was not incarcerated at the time, as a covert informant. Defendants thus allege that the government's failure to disclose information about CS-13's brother in the Adams Affidavit was a material non-disclosure.

Defendants correctly note that the Adams Affidavit did not mention CS-13's brother, but their argument is too speculative. Beyond their conclusory allegations, defendants have produced no evidence as to if, when and how CS-13's brother worked as a government informant. Accordingly, this argument does not satisfy the substantial initial showing required for a <u>Franks</u> hearing.

### 5. Traditional Surveillance Techniques

Defendants further contend that the Adams Affidavit materially misrepresented the potential usefulness of traditional investigative techniques, such as use of GPS devices and helicopters. The court disagrees. The Adams Affidavit provided a thorough analysis of the government's use of several traditional investigative techniques, including physical surveillance, trash and mail covers, and analysis of toll records, pen registers, and trap and trace data. Adams Aff. ¶¶ 68-96. These techniques, however, were not sufficient to successfully investigate the BNO. <u>Id.</u> Moreover, as the government persuasively argues, the two types of surveillance defendants suggest should have been used in lieu of the wiretaps—GPS and helicopter—merely aid an investigation. While they are useful in identifying residences associated with targets of an investigation, they are of little use in determining the significance of such residences. Finally, it is unlikely that these and other types of traditional surveillance would have led to identification of BNO satellite conspirators. Thus, defendants' contentions about what the government could have done with further use of traditional surveillance techniques do not raise a substantial challenge to the necessity of the November Wiretap.

### B. CS-13

As discussed, *supra*, the Adams Affidavit stated that CS-13 provided the government with information about Borrego, Floriano and Manriquez, all of whom were suspected of being associated with the BNO. Defendants allege that although the Adams Affidavit included this information, it nonetheless omitted material facts about CS-13's ties to the BNO. Defendants base their arguments primarily on information found in two documents: a July 16, 2004 DEA arrest report on intelligence gathered from CS-13's cell phone ("Arrest Report"); and an October 17, 2004 DEA report on CS-13's debriefings ("Debriefings"). Def. Moreno's Exh. A & B. The Arrest Report and Debriefings indicate that CS-13 had been in contact with Lazarito, Manriquez and Floriano. Specifically, Lazarito's and Manriquez's phone numbers were found stored in CS-13's cell phone, Id., Exh. A at 2, 6-7, several of Floriano's phone numbers were found in CS-13's apartment, Id., Exh. B at 8, and CS-13 admitted to storing and selling heroin for Manriquez, Id. at 1-2. Further, records showed that Telephone Target 2 and Telephone Target 3 had been in contact with a phone number registered to Faustino Aguayo, the original primary suspect in the investigation. Id., Exh. A at 2.

Defendants claim that this information, which was not disclosed in the Adams Affidavit, demonstrates that the government could have used CS-13 to accomplish the main goals of the investigation: identification and prosecution of Floriano and other members of the BNO's supply network; and identification and prosecution of Lazarito and other members of the BNO's distribution network.

In response, the government disputes both that the Adams Affidavit contained omissions and that CS-13 could have been used to accomplish the goals of the November Wiretap. First, the government contends that most of the information about CS-13 that was omitted in the Adams Affidavit was disclosed to Judge Chesney in an addendum filed before the authorization of the November Wiretap. Second, the government contends that CS-13 was of limited use. On this point,

11

the government notes that CS-13 was incarcerated and, thus, unsuitable for covert action.  The government also claims that when the Adams Affidavit was executed, it believed that CS-13 was involved in an organization that was separate from the BNO, and as such would be of little use in investigating the BNO.

Having reviewed the evidence, the court finds that defendants have not made the substantial preliminary showing required for a <u>Franks</u> hearing.  First, the court finds that the Adams Affidavit was not intentionally or recklessly misleading.  It appears to the court that the Adams Affidavit included all information about CS-13 that the government believed was relevant to the BNO investigation.  The government did not believe that CS-13 was involved in the BNO.  In the Debriefings, CS-13 claimed to work for Manriquez, not Borrego.  Def. Moreno's Exh. B at 2-3.  CS-13 provided information about Borrego, but claimed they had not spoken in six months and had not entered into a drug deal in approximately five years.  <u>Id.</u> at 7 & 10.  CS-13 also did not reveal any information about connections to Lazarito.  <u>See</u> <u>id.</u> at 1-11.  Although defendants are correct that Lazarito's phone number was found in CS-13's cell phone, it was listed under the name "Chivo," and the government apparently was not aware at the time that Chivo was an aka for Lazarito.  <u>Id.</u> at 7; <u>see</u> Gov.'s Opp. at 16-17.  When asked about the name Chivo, CS-13 stated only that he was associated with Borrego and did not reveal his true identity.  Def. Moreno's Exh. B at 7.  Thus, the court cannot conclude that the government deliberately or recklessly misrepresented CS-13's connections to the BNO.

Second, assuming, *arguendo*, that agents were aware of CS-13's ties to Borrego, Lazarito and Floriano, it is nonetheless likely that the November Wiretap was necessary to reveal the BNO's satellite conspirators.  Defendants do not allege that CS-13 knew or had ties to all of the BNO's satellite conspirators.  Rather, defendants claim that CS-13 would have provided the government with evidence to identify and prosecute certain primary conspirators.  Even this, however, ignores the fact

12

that CS-13 was incarcerated and, thus, of limited use in the investigation. In any event, in light of the Ninth Circuit's willingness to consistently uphold "findings of necessity where traditional investigative techniques lead only to the apprehension and prosecution of the main conspirators," the court cannot conclude that the government's access to CS-13 negated the need for the November Wiretap. McGuire, 307 F.3d at 1192 (quoting Torres, 908 F.2d at 1422).

II.  Defendant Isais-Cabrera's Motion for Reconsideration

Defendant Isais-Cabrera also moves for reconsideration of the court's denial of his motion to suppress evidence obtained from wiretap orders issued on December 27, 2004, January 19, 2005, January 21, 2005 and February 10, 2005. See Docket Entry 217. Isais-Cabrera asserts that new information about CS-13 revealed in the current motion is relevant to his previous motion. Specifically, he cites CS-13's Arrest Report and Debriefings as evidence that CS-13 could have identified Borrego, thus negating the need for the wiretaps. See Def. Moreno's Exh. A & B.

The court is not persuaded by Isais-Cabrera's argument. Assuming, *arguendo*, that CS-13 would have been willing to identify and provide evidence implicating Borrego as the leader of the BNO, the challenged wiretap orders were still necessary to identify and prosecute BNO satellite conspirators. Borrego was simply one of many targets of these wiretaps. Accordingly, Isais-Cabrera's motion for reconsideration fails.

CONCLUSION

Defendants' motion to suppress evidence derived from the November Wiretap of Target Telephone 2 and Target Telephone 3 is DENIED. Defendant Isais-Cabrera's motion for reconsideration is DENIED.

IT IS SO ORDERED.

Dated: March 7, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California